# APPENDIX.

The following cases were accidentally omitted from the New Orleans and Monroe decisions.

## Louisa Marshall v. Mrs. Charles Watrigant et als.

Where the appellee has not been cited, and the fault is not imputable to the appellant, further time for service of the citation of appeal will be granted under the Act of the 20th of March, 1839.—*Buchanan*, J.

Where a suit was brought by a slave, who caused herself to be sequestered, and when an appeal was taken from a judgment rendered in her favor, she could not be found to be served with the citation of appeal—*Held:* That service of the citation upon her counsel must be considered as good as if she had departed from the State.—*Cole*, J.

A person to whom a *statu liber* owes service, has the right, on moving from one State to another, to take such *statu liber* with him, and thus change the domicil of the *statu liber*.

The *status* of a slave, or *statu liber*, is governed by the law of his domicil.

Where a *statu libera* domiciliated with the person to whom she owed service in Louisiana, fled from such service to the State of Kentucky, from whence she had been removed while a *statu libera*, and there obtained a judgment in a court of Kentucky (by whom counsel was appointed to represent the absent defendant) against her owner in Louisiana, recognizing her right to her freedom—*Held:* That in a suit afterwards brought by her, on her return to Louisiana, against the owner from whom she had fled, the judgment so obtained would not be recognized as binding on the defendant. The domicil of both plaintiff and defendant being in Louisiana, the courts in Kentucky could not assume jurisdiction over the *status* of plaintiff, nor render a judgment binding on defendant, without notice to him.

Where the statutes of another State are not offered in evidence, the law there will be presumed to be the same as our own.

Since the Act of the Legislature of 1857, prohibiting the emancipation of slaves in Louisiana, the right of a *statu liber* to freedom cannot be recognized.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J.
*G. L. Bright* and *Egan & Dupuy*, for plaintiff. *G. LeGardeur*, for defendant and appellant.

On motion to dismiss appeal.

BUCHANAN, J. The ground of this motion is, that neither the appellee, *Louisa Marshall*, nor her counsel, was cited to answer the appeal.

There are two appellees, *Louisa Marshall*, the plaintiff, and *Madam Courtois*, the warrantor. The citation of appeal for the latter was served in person; that for *Louisa Marshall* is returned as follows :

" Received, April 13th, 1857, and after due and diligent search and inquiry, *Louisa Marshall* could not be found."

The Article 582 of the Code of Practice provides as follows :

" The Sheriff shall serve the petition and citation on the appellee, if he reside in the State, or his advocate, if he do not, by delivering a copy of the same to such appellee, or to his advocate, or by leaving it at the place of their usual domicil."

In the construction of this Article, it has been ruled that, when the appellee cannot be found, service of citation should be made on the attorney of record of such appellee. Hennen's Digest, p. 62, No. 20.

The counsel of appellee, in support of his motion, has referred us to a case of

*Ratliff* v. *His Creditors*, in 14th L. R., p. 292, where an appeal was dismissed upon a return of the Sheriff that " the appellees were not found in his parish." In the reasons for judgment in that case, we find Judge Martin, the organ of the court, declaring that the irregularity in the service (or rather the want of service) was clearly imputable to the counsel of the appellant, and therefore, that the court was without power to give relief under the Act of 20th March, 1839.

But the present case appears to present different facts. The plaintiff and appellee appears to be a person held in slavery by the defendant and appellant, and who institutes this suit for her freedom. In her petition, she prays that the court will *ex officio* order a writ of sequestration to issue, commanding the Sheriff to take into his custody the body of petitioner ; and on the same day that the petition was filed, we find in the record an order signed by the Judge of the court below, " that the Sheriff of the parish of Orleans sequester and take into his custody the petitioner, *Louisa Marshall*, and her safely keep in his possession and under his control, until the further order of this court." We infer that this order was executed, and there is nothing in the record showing that the order of sequestration was ever rescinded, or that the plaintiff was ever taken out of the custody of the Sheriff upon a bond. We find her appearing before a magistrate, two months afterwards, to make an affidavit for the purpose of obtaining a commission to take the testimony of witnesses residing out of the State. From these facts, we are bound to presume that the Sheriff has had the legal possession and custody, as sequestrator, of the person of the plaintiff, to the present time ; and if he has not been able to find her, for the purpose of serving the citation of appeal upon her, most clearly the fault is not ʼimputable to the appellant, but to the Sheriff himself ; and the appellant is entitled to relief under the Act of 20th March, 1839, p. 170, and of 14th March, 1855, p. 315, sec. 14.

It is, therefore, adjudged and decreed, that this rule be dismissed, and that fifteen days from the rendition of this decree be allowed for service of the citation of appeal upon the plaintiff, or upon *George L. Bright, Esq.*, her attorney, (in case the plaintiff cannot be found). It is further ordered, that the costs of this rule abide the final decision of the cause.

On second motion to dismiss appeal :

COLE, J. A rule was heretofore taken to dismiss this appeal, on the ground that appellee had not been cited, whereupon, on account of some particular circumstances and the want of laches on the part of appellee, this court ordered that appellant have fifteen days to cite the appellee, and the citation be served on *Louisa Marshall*, and if she cannot be found, that service be made on her counsel.

A citation issued, and the return of the Sheriff shows that " after diligent searches and inquiries, he learned that *Mrs. Louisa Marshall* resides in the town of Franklin, in the parish of St. Mary," and then served the papers on her attorney, who refused to accept service.

The general rule is, that neither admission of service of citation of appeal by the attorney, nor service on him is good, unless the absence of the client from the State be legally proved.

This case is an exception to the general rule ; plaintiff, a colored woman, brings suit for her freedom against defendant, who claims to be her owner, and calls upon the court for a writ of sequestration, and causes herself to be placed in the possession and custody of the Sheriff.

There she was bound to remain until the final termination of the suit, whether released upon bond or not. Code of Practice, Art. 280.

As she has removed from the jurisdiction of the court in violation of law, appellant is not obliged to search for her beyond that pale, and service upon her counsel must be considered in this case as good as if she had departed from the State.

It is, therefore, ordered, adjudged and decreed, thas the rule be dismissed, at the costs of the mover.

On the merits :

MERRICK, C. J.   This suit is brought by the plaintiff to recover her freedom.

If her identity be conceded, it will appear that the plaintiff was born about the year 1822 the slave of *George Belcher*, of Mercer County, Kentucky; that *Belcher* died in 1824, leaving a will which was admitted to probate, by which he declared that the plaintiff was to have her freedom at the age of thirty years; that when she was about thirteen years of age she was removed to the State of Missouri, by one *Wood*, who had married the grand-daughter of *Belcher*, and probably the legatee of *Louisa*, that she was subsequently removed to New Orleans, where she was sold as a slave for life, and after having remained several years and passed through several hands, was finally purchased by the defendant, *Mrs. Watrigant*, in good faith on the 21st day of January, 1854. Not long after, to use the language of her petition, "She fled from bondage and the service of the aforesaid *Anna Husson*, (*Mrs. Watrigant*,) to Mercer County Kentucky," where she instituted a suit in the Circuit Court of Mercer County, on the chancery side, and obtained a judgment decreeing her to be free, and awarding her execution against the defendants, for costs, although they had in no manner been notified of the proceedings and were only represented by counsel acting under instructions from the court, who filed an answer in their behalf as absentees. She then returned to Louisiana, armed with her Kentucky judgment.

The judgment of the lower court was in favor of the plaintiff; it also dismissed the defendant's demand in warranty.

The defendant has appealed.

The first question which the record presents is the effect which must be given to the Kentucky decree. Does it bind the defendant?

We are of the opinion it does not, for two reasons, viz : 1st, the domicil of *Louisa Marshall* was Louisiana, and the laws and courts of Louisiana alone had jurisdiction over her *status*, and, 2d, because the domicil of the defendant was also in Louisiana, and a foreign court could not assume jurisdiction over them in such a manner as to bind them in the absence of notice.

The question of the domicil of the plaintiff will appear sufficiently plain by a moment's reflection as to the condition of *statu liberi* in the Southern States. Take the case of the plaintiff.   When she was two years of age she was given by *Belcher* to his grand-daughter, then unmarried.   The legatee of the plaintiff married, and it became the interest of the married couple to remove to Missouri. Was there anything in the law of Kentucky which prevented their removal? Could they not take with them those who owed them service ?   These questions must be answered, the first in the negative and the latter in the affirmative, for it cannot for a moment be maintained that these Southern States do not stand upon precisely the same footing as it regards the institution of slavery, and that the condition of the slave is not the same in all.   There was then no fraud committed towards the laws of Kentucky when *Woods* moved to Missouri, or subse-

quently to Louisiana, if such were the case, *Woods* was not required to sell the *statu libera* who belonged to his family, but might lawfully take her with him. 4 N. S. 102.

And when he so removed, the plaintiff had acquired no permanent domicil in Kentucky. Her domicil was with those to whom she owed service. First, with *Belcher*, afterwards with *Woods* and subsequently his vendees. See Story's Conflict of Laws, sec. 46 ; *Mary* v. *Brown*, 5 An. 269 ; *Conant* v. *Gesnard*, ib. 696.

When *Woods* moved with her to Missouri, that became her domicil. When he, or those holding under him, removed her to Louisiana, which was previous to the year 1841, Louisiana became her domicil ; and so it remained at the time she became a fugitive therefrom and obtained her decree from the courts of Kentucky.

The decree of the court of Mercer County and State of Kentucky could not then bind the defendants, because it was not vested with jurisdiction over the subject-matter, (the *status* depending upon the domicil of the slave,) nor over the person of the pretended parties to the decree. See *Dred Scott's* case, 19 Howard, 452 ; *Dupuy* v. *Hunt*, 2 An. 562 ; *Broughton* v. *King*, ib. 569 ; *Stephens* v. *Graves*, 9 An. 239, and *Succession of Duncan and Mary Shaw*, recently decided.

The decree which the plaintiff presents, (obtained whilst she was a fugitive,) must, therefore, be looked upon as in fraud of defendant's rights and obtained under the supposition that it would confer upon the plaintiff some undue advantage. It cannot be enforced here.

But it is said that the plaintiff was free, independent of the decree of the Mercer County court. When plaintiff was removed to Louisiana there was no law of the State which prevented her emancipation any more than in Kentucky. Her removal here does not appear to have been made to prejudice her rights, nor is there anything to show that it was not done in good faith. She was, therefore, as liable in one State as the other to become subject to future legislative restrictions upon her emancipation. Hence her removal to Louisiana does not strengthen her case, for it was not in the eye of the law then a wrongful act.

Then the question arises, whether the plaintiff was free at the inception of this suit ?

It is said she was, under the law of Kentucky, where *Belcher* made his will, and that this court has so adjudged in 10 An. 555.

The statutes of Kentucky have not been offered in evidence, and in their absence the law there must be presumed to be the same as our own. If so, the will of *Belcher* did not make the plaintiff free twenty-eight years after it was made. Something more was required, viz : a recognition of the *status* of the plaintiff on the part of those holding her as well as the public or public authorities. *Angelina* v. *Whitehead*, 3 An. 556, 11 An. 454. She was not free when the will was made but she was to become free twenty-eight years afterwards, subject to all natural or legal contingencies which might happen to interrupt, or to such forms of proceeding as the. lawgiver might provide for, the recognition of such emancipation. Being within the jurisdiction of the laws of Louisiana, she becomes subject to the forms prescribed by the same. *Maria* v. *Edwards*, 1 Rob. 361. She is in no better condition by the production of a will made in Kentucky than she would be, if the will under which she claims had been made in Louisiana. And we have recently held that such a will, for the present at least, will be un-availing. See case of *Delphine* v. *Guillet*, 11 An. 424, and the cases recently

decided between same parties, in which effect was given to the late Act of the Legislature prohibiting the emancipation of slaves. Act 1857, p. 55.

We do not think the case of *Matilda* v. *Autrey*, 10 An. 555, at all in conflict with these views. In that case the will was made in Kentucky, and the plaintiff, *Matilda*, became free in Alabama. The defendants, it seems, improperly possessed themselves of her after the death of her mistress, the only person who had a right to her services, and at whose death she was to be free, and hurried her away to Louisiana.

There being at that time no statute prohibiting the emancipation of slaves in Louisiana, this court properly held that the plaintiff must be considered free as against the defendants, who " pretended to no title whatever," and who were unable to show any " legal obstacle to the recognition of plaintiff's freedom."

That case is manifestly very different from the one under consideration ; for here there are persons claiming to be owners in good faith ; the age at which the plaintiff was to be emancipated arrived while she was residing and had her domicil in Louisiana, where her freedom could only be recognized by public authority, and where, since she became a fugitive, a statute of the State has been passed which is a bar, for the present, to her emancipation.

If the plaintiff fails in obtaining her freedom, it is perhaps owing to her having absconded and losing time abroad, instead of applying to the courts of her domicil, which then had power to grant her demand if she had not forfeited her rights by her bad conduct.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that there be judgment in favor of the defendant, as in case of nonsuit, the plaintiff paying the costs of both courts.

SPOFFORD, J., dissenting. This is not the suit of a slave to procure an emancipation ; it is a suit brought by a person alleging herself to be already free in law, but tortiously restrained of her liberty by the defendant.

If the averments of the petition are true, the action can now be maintained, notwithstanding the statute of 1857 forbidding *emancipation in this State*. The suit of *Delphine* v. *Guillet*, recently decided, was a suit to procure an emancipation by one acknowledged to be in law still a slave. That case, therefore, bears no analogy to this.

It would also be a mistake to suppose that the plaintiff's action is grounded merely upon the decree of the Chancery Court in Kentucky. That decree did not *emancipate* the plaintiff; it simply recognized her as a free woman by virtue of an anterior right, to wit, the will of her former master. It did not create her *status ;* it only acknowledged it.

The question to be decided now is, not whether *Louisa Marshall* shall be emancipated in this State, for it is conceded, on all hands, that she cannot be, under the subsisting law ; but the question is, was she really a free woman at the date of the institution of her suit ? If so, we are bound to recognize her freedom.

She was born in Kentucky. By her master's will absolute freedom was bequeathed to her upon her attaining the age of thirty years, which she had reached long before this suit was brought. That bequest was legal and valid by the laws of Kentucky, where it was made, and where her master was domiciliated up to the date of his death. Upon his death, by virtue of that will duly admitted to probate, *Louisa* became a *statu libera*, with a vested right to freedom at the age of thirty years. The mere lapse of that time transformed her into a free person, without any further formality, under the Kentucky law.

The wrongful act of a usurper in carrying her out of Kentucky and selling her as a slave for life, could not destroy her vested rights. She would still be free at the age of thirty years, leaving purchasers to their recourse against their warrantors.

We recognized and enforced these principles in the case of *Matilda* v. *Autrey*, 10 An. 555, and I think they should govern this case.

Our statutes guard us sufficiently against any injury from this class of persons. It was provided in 1842, when this *statu libera* was in the State, that " all *statu liberi* now in the State shall, when they become free, be transported out of the State at the expense of the last owner, by proceeding before the parish Judge at the suit of any citizen, and such *statu liberi*, when transported out of the State, shall, on returning into the State, be liable to all the penalties provided by law against free negroes or persons of color coming into the State." Act of March 16th, 1842, sec. 14; Session Acts, 1842, p. 316.

I, therefore, think the judgment should be affirmed.